IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| STATE AUTO PROPERTY & CASUALTY INSURANCE COMPANY, as subrogee of SOUTHERN KNOLLS, LLC,<br><br>    Plaintiff,<br><br>vs.<br><br>QUIKTRIP CORPORATION,<br><br>    Defendant. | No. 4:22-cv-00032-JEG-SHL<br><br>ORDER |

This matter is before the Court on a Motion to Dismiss filed by Defendant QuikTrip Corporation (QuikTrip), ECF No. 9, seeking dismissal of this action pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff State Auto Property & Casualty Insurance Company (State Auto), as subrogee of Southern Knolls LLC, filed a resistance. QuikTrip filed a reply. Neither party requested a hearing, and the Court finds no cause for additional argument. The matter is ready for disposition.

I.    **BACKGROUND**[1]

Southern Knolls is an Iowa limited liability company with members residing in Iowa, California, Colorado, and Hawaii. State Auto is an insurance company incorporated under Ohio law, with a principal place of business in Ohio. QuikTrip is a retailer of fuel and other goods incorporated under Oklahoma law, with a principal place of business in Oklahoma. QuikTrip operates a gas station at 3941 Southeast 14th Street in Des Moines, Iowa, which is located

---

[1] At the pre-answer motion stage, the Court must "accept 'as true the complaint's factual allegations and grant[] all reasonable inferences to the non-moving party.'" Park Irmat Drug Corp. v. Express Scripts Holding Co., 911 F.3d 505, 512 (8th Cir. 2018) (alteration in original) (quoting Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 591 (8th Cir. 2009)).

directly across the street from an apartment complex owned by Southern Knolls and insured by State Auto.

On April 7, 2021, Curtis Giovannte entered QuikTrip's gas station on Southeast 14th Street, where he purchased several plastic soda fountain cups. He proceeded to fill the fountain cups with gasoline. When QuikTrip employees observed Giovannte attempting to purchase gas using unauthorized containers, they stopped the pump to prevent the sale. The employees told Giovannte that he would need to buy an appropriate container if he wished to purchase gas. Giovannte said he lacked the money and left the store.

About ten minutes later, Giovannte returned with a gas can. He spoke with assistant manager Solonia Gene, who was aware that Giovannte had been denied service shortly before. Giovannte told Gene that she was "going to get to know [Giovannte] real well," that he was "going to handle a situation," and that he would be "broadcast." Compl. ¶ 14, ECF No. 1. State Auto asserts Giovannte made threats to Gene and other QuikTrip employees that he was going to cause a fire. Despite his conduct and statements, the employees allowed Giovannte to fill his container with several dollars' worth of gasoline. Giovannte then walked across the street, where he entered a building in Southern Knolls' apartment complex, doused a hallway with gas, and lit a fire.

Southern Knolls sustained property damage and lost rental income in excess of one million dollars as a result of the blaze. Giovannte was arrested and charged with arson. Gene later admitted she had been worried about selling gas to Giovannte but did not have time to stop him from purchasing gas or to call 911 because it was a busy time of night with a number of customers in the store. According to State Auto, Gene admitted to saying a prayer after Giovannte left with the gas because she was worried that he would cause damage or harm someone.

On February 8, 2022, State Auto, as subrogee of Southern Knolls, filed its two-count Complaint against QuikTrip asserting claims for Negligence (Count I) and Gross Negligence

(Count II) based on QuikTrip's sale of gasoline to Giovannte. State Auto alleges QuikTrip breached a duty to Southern Knolls by (1) selling gas to Giovannte despite QuikTrip's awareness of his conduct and statements that evidenced a clear criminal intent to cause property damage or harm; (2) failing to appreciate the risk of selling gas to Giovannte after his conduct and statements evidenced a clear criminal intent to cause property damage or harm; (3) failing to take any precautions to ensure Giovannte would not cause damage to property or harm to others with the gas they sold him; (4) failing to alert authorities to the imminent risk Giovannte posed to the community; (5) failing to properly and adequately train store personnel and employees on risk management practices; (6) failing to implement risk management policies, practices, and procedures to ensure its employees and managers were able to properly respond to suspicious behavior by customers; and (7) failing to otherwise use due care under the circumstances. State Auto alleges Southern Knolls' damages were a direct and proximate result of this negligence.

On March 8, 2022, QuikTrip filed a Motion to Dismiss, contending State Auto's complaint fails to state a claim for negligence or gross negligence because "QuikTrip did not owe a duty to Southern Knolls, LLC or State Auto Property & Casualty Insurance Company" and because it "owes no duty for the actions of Curtis Giovannte." Def.'s Mot. to Dismiss ¶ 3, ECF No. 9. QuikTrip argues that "[a] business's duty to protect against third party harm is limited to those lawfully on the business's land" and that "[w]hatever duty QuikTrip may have had to control Curtis Giovannte ended once Giovannte left QuikTrip's property." Def.'s Br. 2, ECF No. 9-1.

## II.   DISCUSSION

### A.   Standard for the Motion

"To survive a 12(b)(6) motion to dismiss, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" McShane Constr. Co. v. Gotham Ins., 867 F.3d 923, 927 (8th Cir. 2017) (quoting Ashcroft v. Iqbal, 556

U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. The Court must "accept[] as true the complaint's factual allegations and grant[] all reasonable inferences to the non-moving party." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 591 (8th Cir. 2009). This rule "is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678. "[F]ederal courts may dismiss a claim that lacks a cognizable *legal* theory." Iowa Voter All. v. Black Hawk Cty., 515 F. Supp. 3d 980, 988 (N.D. Iowa 2021) (citations omitted).

### B.     Iowa Duty Standards

The Court's jurisdiction in this case is based on diversity of citizenship. 28 U.S.C. § 1332(a). Federal courts sitting in diversity apply state substantive law. See Fed. Ins. Co. v. Great Am. Ins. Co., 893 F.3d 1098, 1102 (8th Cir. 2018) (citing Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)). Under Iowa law, which both parties apply here, "[a]n actionable negligence claim requires the existence of a duty to conform to a standard of conduct to protect others." Morris v. Legends Fieldhouse Bar & Grill, LLC, 958 N.W.2d 817, 821 (Iowa 2021) (internal quotation marks omitted) (quoting McCormick v. Nikkel & Assocs., Inc., 819 N.W.2d 368, 371 (Iowa 2012)). "Whether a defendant owes a duty of care under particular circumstances is a question of law for the court." Lukken v. Fleischer, 962 N.W.2d 71, 77 (Iowa 2021) (citing Hoyt v. Gutterz Bowl & Lounge L.L.C., 829 N.W.2d 772, 775 (Iowa 2013)).

Historically, Iowa courts looked to three factors in determining whether a duty of care exists: "(1) the relationship between the parties, (2) reasonable foreseeability of harm to the person who is injured, and (3) public policy considerations." J.A.H. ex rel. R.M.H. v. Wadle & Assocs., P.C., 589 N.W.2d 256, 258 (Iowa 1999) (citing Leonard v. State, 491 N.W.2d 508, 509–12 (Iowa 1992)); see also Morris, 958 N.W.2d at 821 (recounting Iowa's traditional duty standard). These factors were "not . . . viewed as three distinct and necessary elements, but

rather as considerations employed in a balancing process." Thompson v. Kaczinski, 774 N.W.2d 829, 834 (Iowa 2009) (citing Stotts v. Eveleth, 688 N.W.2d 803, 810 (Iowa 2004)). Ultimately, the question of duty required courts to decide, based upon "all relevant considerations," whether "a particular person [was] entitled to be protected from a particular type of harm." Id. (quoting J.A.H., 589 N.W.2d at 258).

In Thompson v. Kaczinski, the Iowa Supreme Court revised its longstanding duty analysis by adopting § 7 of the Restatement (Third) of Torts, which reallocates "[t]he assessment of the foreseeability of a risk . . . to the fact finder." Thompson, 774 N.W.2d at 835. In that case, a driver sustained injuries after swerving to avoid a trampoline that had blown from a neighboring property by an overnight storm. Id. at 831–32. He sued the property owners for common law negligence and negligence per se. Id. at 832. The trial court granted the defendants' motion for summary judgment, finding with respect to the common law claim that the trampoline's owners owed no duty to the driver because the trampoline's flight from their yard to the road was not foreseeable. Id. at 832. On review, the Iowa Supreme Court agreed the owners owed no statutory duty but disagreed regarding their common law duty, stating "[a]n actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm" and courts "need not concern themselves with the existence or content of this ordinary duty." Id. at 834 (quoting Restatement (Third) of Torts: Liab. for Physical Harm §§ 6 cmt. f, 7(a) (Am. L. Inst., Proposed Final Draft No. 1, 2005)). The court explained that this ordinary duty of reasonable care should only yield to "an articulated countervailing principle or policy" in "exceptional" circumstances. Id. at 835 (citation omitted). It held that foreseeability of harm is not a proper basis for finding no duty but instead a factor for the jury to weigh in considering the element of breach. Id.; see also Morris, 958 N.W.2d at 822 ("[F]oreseeability should not enter into the duty calculus but should be considered only in determining whether the defendant was negligent." (quoting McCormick, 819 N.W.2d at 371)).

Today, the ordinary duty of reasonable care "will apply in most cases." McCormick, 819 N.W.2d at 834. Yet, by removing foreseeability from the duty analysis, the Iowa Supreme Court "did not erase the remaining law of duty." Morris, 958 N.W.2d at 822; see also Huck v. Wyeth, Inc., 850 N.W.2d 353, 375 (Iowa 2014) ("Thompson did not supersede our precedent limiting liability . . . ."). Even after Thompson, "a lack of duty may be found if either the relationship between the parties or public considerations warrant limiting liability." Id.; see also, e.g., Lukken, 962 N.W.2d at 76–77 (holding a zip line manufacturer had no duty to a rider injured when a park employee failed to reset an aftermarket braking system installed without knowledge of the manufacturer); Lewis v. Howard L. Allen Invs., Inc., 956 N.W.2d 489, 490–92 (Iowa 2021) (concluding the seller of a home on contract owed no duty to the buyer's tenant for injuries the tenant sustained in a housefire); Estate of McFarlin v. State, 881 N.W.2d 51, 64 (Iowa 2016) (finding the state owed no duty of care to an individual speedboat passenger killed when his boat struck a submerged dredge pipe in a state-owned lake).

### C.     Whether QuikTrip Owed a Duty to Southern Knolls

QuikTrip contends State Auto's Complaint fails to allege a cognizable theory of negligence because QuikTrip owed no duty of care to Southern Knolls.[2] It relies primarily on Morris v. Legends Fieldhouse Bar & Grill, where the Iowa Supreme Court stated a "business owner's duty to protect patrons from third parties ends when they leave the premises." Morris, 958 N.W.2d at 822 (citing Davis v. Kwik-Shop, Inc., 504 N.W.2d 877, 879 (Iowa 1993)). QuikTrip reads Morris to limit the duty of care to a defendant's property lines. It argues that no

---

[2] Neither party suggests that State Auto's claim for "Gross Negligence" is subject to a separate analysis or can otherwise survive for lack of a duty. The Iowa Supreme Court "do[es] not recognize a tort cause of action based on 'gross' negligence as distinct from 'ordinary' negligence." Lukken, 962 N.W.2d at 81 (citations omitted). The Court finds that both Counts I and II assert claims for common law negligence.

y
w

duty exists in this case because State Auto "does not allege that the fire started on QuikTrip's premises."  Def.'s Br. 2, ECF No. 9-1.

In Morris, the Iowa Supreme Court discussed the special duty of care that arises between a business owner and its patrons.  See Morris, 958 N.W.2d at 822.  The mother of a strip club patron killed in a hit-and-run accident after being ejected from the club sued for negligence, alleging the club had a duty not to allow their son to leave on foot while he was too intoxicated to safely get home.  Id. at 819–21.  The strip club moved for summary judgment contending the claims failed as a matter of law because the patron's injuries "did not occur on the premises or by an instrument that came from the premises."  Id. at 821.  In ruling on the motion, the court observed the common law rule that businesses "who hold their land open to the public owe a duty of reasonable care to persons lawfully *on their land* who become ill or endangered by risks created by third parties."  Id. at 822 (quoting Hoyt, 829 N.W.2d at 776); see also Restatement (Third) of Torts: Liab. for Physical Harm § 40(b)(3).  But it concluded that Iowa law had "never extended the business-patron duty of care to . . . harm inflicted by a third party nearly half a mile away and over thirty minutes after the victim left the building."  Id.  Unlike the decedent in Morris, Southern Knolls was not a QuikTrip customer, and State Auto does not assert an affirmative duty of care arising from the business-patron relationship.  The Iowa Supreme Court's holding as to the scope of the business-patron duty is inapplicable here.

State Auto suggests that its claims are better evaluated under the ordinary duty rubric of Restatement (Third) § 7.  It argues that QuikTrip owes a "presumpti[ve] . . . duty of reasonable care" toward members of the public not to sell gasoline to ill-intentioned customers.  Pl.'s Resist. Mot. to Dismiss 3, ECF No. 11.  State Auto cites Scoggins v. Wal-Mart Stores, Inc., 560 N.W.2d 564 (Iowa 1997), as an example of a case recognizing State Auto's theory of "negligent sale."  There, a boy died from a self-inflicted gunshot wound, and his estate claimed negligence based on Wal-Mart's sale of ammunition to a minor in violation of federal law.  Id. at 566.  The

Iowa Supreme Court affirmed a directed verdict in favor of Wal-Mart, finding the boy's suicide "was a superseding cause, as a matter of law, that relieves Wal-Mart from liability for the negligent sale of ammunition to him." Id. at 570. Scoggins—a pre-Thompson case decided on the basis of proximate cause and thus, foreseeability—did not otherwise discuss duty, nor did it involve a third party's claim of harm caused by a defendant's customer. See id. at 567 (applying a proximate cause analysis based on "foreseeability of the harm flowing from the actor's conduct" to determine Wal-Mart's liability (quoting State v. Ayers, 478 N.W.2d 606, 608 (Iowa 1991)). Therefore, Scoggins is also unhelpful in resolving the legal question at hand.

The parties have not provided, nor has the Court identified, any Iowa precedent discussing whether an ordinary duty of care extends between the seller of a non-defective product and members of the general public who risk being harmed by a dangerous purchaser—what some commentators have referred to as a "defective customer" case. See Robert M. Howard, Note, The Negligent Commercial Transaction Tort: Imposing Common Law Liability on Merchants for Sales and Leases to "Defective" Customers, 1988 Duke L.J. 755 (1988). Looking to other jurisdictions that have applied the Restatement (Third) framework in this context is informative. See Godfrey v. State Farm Fire & Cas. Co., 11 F.4th 601, 603 (8th Cir. 2021) (stating that when a state's highest court has not spoken on a particular issue, a federal court sitting in diversity must attempt to predict how a state court would rule by looking to "relevant state precedent, analogous decisions, considered dicta[,] and any other reliable data" (alteration in original) (citation omitted)).

The Court finds some help from a recent case out of the Tenth Circuit. On a certified question from the United States Court of Appeals for the Tenth Circuit, the New Mexico Supreme Court looked to § 7 of the Restatement (Third) of Torts in addressing whether a gasoline vendor owed a duty to the motoring public to deny sale of gas to an intoxicated driver. See Morris v. Giant Four Corners, Inc., 498 P.3d 238 (N.M. 2021). There, a defendant sold gas

to a drunk customer who then caused an accident that claimed the life of another driver. Id. at 242. The decedent's estate sued the gas station for negligent entrustment, a claim to which "[g]eneral principles of negligence are relevant" under New Mexico law. Id. at 242–43 (citation omitted). The court applied the standard in the Restatement to decide whether the gas station owed a duty of care to other drivers when it sold gas to an intoxicated customer. Id. at 243 (noting "a court does not analyze foreseeability" in determining duty). The court first clarified that, in cases of negligent entrustment, duty "arises out of an entrustor's control of chattel, which is generally . . . independent of any relationship between the parties." Id. at 245 (citation omitted). It therefore rejected the defendant's argument that a duty of care cannot attach where a gas vendor has no preexisting relationship with an injured member of the public. Id. at 246 (reasoning "negligent entrustment requires that the person liable must control the chattel and have reason to believe that by withholding consent he can prevent the third person from using the thing, not that a special relationship exists" (internal quotation marks and citation omitted)). Turning to public policy considerations, the court explained that the duty at issue was a natural extension of New Mexico's well-established policy against drunk driving and the judicially recognized duty not to entrust a vehicle to an intoxicated driver. Id. at 247. Finding policy interests to support imposition of a duty, the court held that "[v]endors of gasoline have a duty to refrain from supplying gasoline to a driver the vendor knows or has reason to know is intoxicated." Id. at 250.

  Giant Four Corners offers a useful model for evaluating whether State Auto's allegations plausibly support a duty of care. Under Iowa's Restatement (Third) approach, the threshold question is whether a defendant's conduct "creates a risk of physical harm." Restatement (Third) of Torts: Liab. for Physical Harm § 7(a). "An actor's conduct creates a risk when the actor's conduct or course of conduct results in greater risk to another than the other would have faced absent the conduct," including "by exposing another to the improper conduct of third

parties." Id. cmt. o; see also Giant Four Corners, 498 P.3d at 244 (finding inherent to the tort of negligent entrustment a "duty to refrain from supplying chattel to a person the supplier knows or has reason to know is likely to use the chattel in a manner creating unreasonable risk of physical harm to the entrustee or others"). The risk-creating conduct alleged in the present case is the sale of gasoline to a customer displaying a clear criminal intent. According to the Complaint, Giovannte stated that he planned to cause a fire, that he intended to "handle a situation," and that he would be "broadcast." Compl. ¶¶ 14–15, ECF No. 1. He first attempted to buy gas using plastic fountain cups, suggesting his intent was not to fill a fuel tank and demonstrating his disregard for the inherent dangers of gasoline. Giovannte's behavior made at least one employee worry about what he would do next. Together, these facts create a plausible inference that QuikTrip employees "knew or had reason to know" Giovannte planned to cause harm at the time they sold him gasoline. Giant Four Corners, 498 P.3d at 242. Selling gasoline to such a customer exposes the public, including property owners like Southern Knolls, to increased risk.[3] Therefore, assuming the truth of the pleaded facts, it is plausible under the current state of Iowa law that QuikTrip owed an ordinary duty of reasonable care to Southern Knolls.

The next question is whether this is an "exceptional case . . . in which an articulated countervailing principle or policy warrants denying or limiting liability." Thompson, 774 N.W.2d at 835 (quoting Restatement (Third) of Torts: Liab. for Physical Harm § 7(b)); see also McCormick, 819 N.W.2d 368 at 371 ("[A] lack of duty may be found if either the relationship between the parties or public considerations warrants such a conclusion."). QuikTrip argues that it has never had a special relationship with Southern Knolls and that applying the ordinary

---

[3] To be clear, in finding that State Auto's well-pleaded allegations plausibly imply that QuikTrip employees knew or had reason to know Giovannte planned to cause harm, the Court does not suggest that the foreseeability of Giovannte's subsequent conduct is determinative. Instead, as in Giant Four Corners, Giovannte's observed behavior and statements serve only to show that the conduct at issue—supplying Giovannte with gasoline—was risk-creating under the circumstances alleged in the Complaint.

duty in this case means "everyone owes a duty to everyone else." Def.'s Reply 2, ECF No. 12. However, that is precisely the presumption of the ordinary duty. See In re Syngenta AG MIR 162 Corn Litig., 131 F. Supp. 3d 1177, 1189 (D. Kan. 2015) ("[U]nder the Third Restatement, the default rule is that everyone owes a duty of care not to create unreasonable risks to others." (citation omitted)). The burden is on QuikTrip to explain why its relationship with Southern Knolls should defeat that presumption here. It has not done so.

QuikTrip also advances no policy rationale against recognition of the duty State Auto asserts. Given the procedural posture of this case, the Court makes no pronouncements of Iowa public policy. It suffices to observe that the facts alleged by State Auto are distinguishable from the Iowa Supreme Court's existing no-duty decisions, where a defendant's lack of any control over the instrumentality of a plaintiff's injury has frequently severed the duty of care. See Lukken, 962 N.W.2d at 77 ("We have reiterated that, under the Restatement (Third) of Torts, control remains an important consideration in whether a duty exists and liability normally follows control."); Morris, 958 N.W.2d at 826 (observing that a strip club "had no control over [the plaintiff's decedent] after he left, and it had no control over [the hit-and-run driver] before he arrived."); McCormick, 819 N.W.2d at 373–75 ("[C]ases involving parties that turn over control of premises to another party are a category of cases where an articulated countervailing principle or policy applies." (internal quotation marks and citation omitted)). Unlike the defendants in those cases, QuikTrip controlled the sale of gasoline at its store. Indeed, it turned Giovannte away once, only allowing him to buy gas upon his return to the store. Any duty QuikTrip owed to Southern Knolls arose from its decision to sell gasoline to a customer who had demonstrated a clear criminal intent, not from its relationship with Southern Knolls. See Giant Four Corners, Inc., 498 P.3d at 245–46.

With due discipline toward the controlling Iowa legal structure, constrained by the standard of the motion currently before the Court, and based on the facts alleged in the

Complaint—that is, a gasoline vendor supplying gas to a customer who the vendor knows or has reason to know will use the gas to harm others—the Court cannot conclude there is no set of facts by which State Auto could show a duty of care sufficient to establish a claim for negligence.  Waters v. Madson, 921 F.3d 725, 734 (8th Cir. 2019) (explaining a motion to dismiss must not be granted unless "plaintiff can prove no set of facts that would demonstrate an entitlement to relief" (citation omitted)).  State Auto's Complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  McShane, 867 F.3d at 927 (quoting Iqbal, 556 U.S. at 678).

### III.  CONCLUSION

For these reasons, QuikTrip's Motion to Dismiss, ECF No. 9, must be **denied**.

**IT IS SO ORDERED.**

Dated this 21st day of April, 2022.

JAMES E. GRITZNER, Senior Judge
U.S. DISTRICT COURT